## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEE ANN STRICKRATH,**

        **Plaintiff,**

                                **Case No. C2-06-1080**

**vs.**                            **Judge Edmund A. Sargus, Jr.**

                                **Magistrate Judge Norah McCann King**

**THE HARTFORD INSURANCE CO.,**
**et al.,**

        **Defendants.**

## OPINION AND ORDER

This case, arising under the Employee Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"), is before the Court for consideration of the Cross Motions for Judgment on the Administrative Record filed by Plaintiff, Dee Ann Strickrath and Defendant, Hartford Life Group Insurance Company and Continental Casualty Company.[1] Plaintiff maintains that she is entitled to long-term disability benefits under her employer's ERISA plan. Hartford contends that it properly determined that Plaintiff was capable of performing the duties of her occupation and therefore correctly terminated her long-term disability payments after ten months. For the reasons that follow, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**; and Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

---

[1]    Defendants indicate that Plaintiff incorrectly named "The Hartford Insurance Company" in her Complaint, and that the correct name of this Defendant is Hartford Life Group Insurance Company. Hartford Life Group Insurance Company is also known as The Hartford Financial Services Group, Inc., Hartford Life and Accident Insurance Company, Hartford Life Insurance Company, Hartford Life Group Insurance Company. The Court hereinafter refers to this Defendant as "Hartford." Plaintiff also named Continental Casualty Company which Defendants indicate is not a proper party to this lawsuit. Given the determination that follows concerning the merits of this dispute, and the fact that the identity of the proper defendant is not at issue, the Court simply notes that the proper defendant is the Hartford Life Group Insurance Company.

I.

## A.    Plaintiff's Occupation

Plaintiff, Dee Ann Stickrath, is presently 46 years old. She worked as a service representative for Kraft Foods Global, Inc. ("Kraft" ) from May 12, 1997 to April 8, 2004.  In her capacity as a service representative, Plaintiff traveled from grocery store to grocery store, set up Nabisco displays and filled  store shelves with product.  Her job duties included "identifying and communicating individual store problems and opportunities to the proper Nabisco personnel" and assisting stores to achieve "full shelf conditions, merchandising displays and shelves, properly rotated stock, and accurate price tags/POS in place for all departments." (HAR 0139[2].)

Kraft's job analysis profile indicates that Plaintiff's work required constant bending, reaching and twisting.  It also indicates that the physical demands of the job required exertion of up to 50 pounds of force occasionally, and up to 20 pounds of force frequently.  (HAR 564-565.)  For clarification on the physical requirements of Plaintiff's job, Hartford interviewed Plaintiff's direct supervisor and two co-workers.  According to Plaintiff's supervisor, Dave Moore, the physical requirements of her job included lifting a maximum of 18 pounds. (HAR 0032.) On average, however, Plaintiff would be required to lift cases of Nabisco products that weigh 12 pounds. Plaintiff's job might have infrequently required her to move product displays weighing 30 to 50 pounds. (HAR 0032.)  In order to perform her job, Plaintiff also required the ability to stand, walk, bend, reach, twist, push and pull. (HAR 0300.)[3]

---

[2]      "HAR ___ " refers to Hartford's Bates' Stamp number and specific page within the Administrative Record.

[3]      Plaintiff contends in her Motion that "[t]he best evidence of the requirements [of her job] would come from Plaintiff herself." (Mot. for Jdmt., at p. 3.)  The Court has reviewed the administrative

Based on this information, Hartford classified Plaintiff's occupation as " light work" using

the definition contained in the Department of Labor's Dictionary of Occupational Titles:

> Light Work is exerting up to 20 pounds of force occasionally and/or up to 10 pounds
> of force frequently, and/or negligible amount of force constantly (constantly: activity
> or condition exists 2/3 or more of the time) to move objects. . . .[4]

(HAR 0470.)

## B.    The ERISA Plan and Plaintiff's Application for Disability Benefits

Plaintiff participated in Kraft's Group Long Term Disability Plan (the " Plan"). Under the

express terms of the Plan, for the first **thirty (30)** months of disability, "total disability" is defined

as "a physical or mental impairment caused by injury or sickness" which leaves the claimant

"continuously unable to perform **the material and substantial duties** of your **own** occupation."

(HAR 0013.)   In addition, to qualify for disability benefits, a claimant must not be otherwise

gainfully employed, and must be receiving appropriate and regular medical care. (*Id.*)

Plaintiff's last day of work at Kraft was April 8, 2004.  Plaintiff complained of diffuse pain,

weakness and numbness in her arms, hands, legs, and feet, pain in her neck, shoulders, knees, legs,

and back.  She applied for Long Term Disability ("LTD" ) benefits on April 9, 2004.  Hartford

approved LTD benefits and paid Plaintiff from December 7, 2004 to October 13, 2005, in accordance

---

record, however, and has found that she has submitted no such admissible evidence.  Plaintiff's Motion
cites to a letter from her counsel submitted to Hartford during the administrative appeals process in
which he mentions that Plaintiff's job required her to lift up to 25 pounds frequently and more than 50
pounds occasionally.  The Court, however, can find no documentation in the record to support her
counsel's representation.  Moreover, Hartford investigated the nature and physical requirements of
Plaintiff's occupation by interviewing Plaintiff's immediate supervisor and two co-workers.  Plaintiff did
not refute this evidence during the appeals process.

[4]     There is evidence that Plaintiff's work involved lifting of 12-pound boxes of cookies,
slightly more than the 10 pounds referenced in the definition of "light work."  This issue in this case is
not whether the job held by Plaintiff was or was not light work.  The issue is whether she is now
physically able to do her former work.

with the Plan, based on Plaintiff's inability to perform the "material and substantial duties" of her

"own occupation." (HAR 0236.)

**C.      Medical Evidence**

The administrative record contains the following medical records related to Plaintiff's

condition: an EMG/nerve conduction study performed on February 28, 2004 was normal. (HAR

0542.). An MRI scan performed on March 10, 2004, found a " very tiny disc bulge at C5-6 [cervical

area of the spine]" with no evidence of a herniated disc, spinal stenosis or nerve root impingement.

(HAR 0570.) A shoulder MRI on August 5, 2004 was negative. (HAR 0508.)

On September 6, 2004, one of Plaintiff's treating physicians, Dr. Butterfield, provided a letter

to Hartford in which he indicated that evaluations to determine the etiology of her pain had been

negative following his examinations, and those conducted by Dr. Kim Newsome and Dr. Robert

Thompson. (HAR 0549.)

Dr. Butterfield referred Plaintiff to Dr. Pearlman, a Physical Medicine and Rehabilitation

specialist, who became her primary care physician. (HAR 0549.)   On October 14, 2004, Dr.

Pearlman submitted a form to the Plan administrator and indicated that the Plaintiff had cervical

spondylosis and shoulder impingement as well as subdeltoid bursitis. He placed restrictions on her,

which included no lifting over 10 pounds repetitively, no reaching above her shoulders and no

repetitive arm or hand movements. He estimated her return to work date of November 5, 2004.

(HAR 0398).

Dr. Pearlman's office note of February 22, 2005 indicates that Plaintiff's shoulder pain was

in part consistent with chronic bursitis/tendinitis, and her other symptoms were suggestive of

possible thoracic outlet syndrome (HAR 0371).

-4-

Electro-diagnostic studies of Plaintiff's upper extremities in March 2005 showed mild slowing of left median conduction consistent with carpal tunnel syndrome and/or cold hand temperature.[5] The study revealed no evidence of cervical radiculopathy, plexopathy, or peripheral neuropathy.

Hartford arranged for and requested that Plaintiff undergo a functional capacity evaluation. Joseph Ogle, a physical therapist, conducted a two-day functional capacity evaluation of Plaintiff on May 18 and 19, 2005 and concluded that she was capable of functioning at the light physical demand level, as defined by the Department of Labor Dictionary of Occupational Titles. (HAR 0465, 0470.)

In June 2005, Dr. Pearlman noted that Plaintiff's lower back pain was consistent with progressive lumbar spondylosis and indicated that it was unclear whether there was a radicular component as well (HAR 0340). On June 9, 2005, Dr. Pearlman diagnosed Plaintiff with fibromyositis and completed a list of her physical restrictions and limitations. (HAR 0340.) Fibromyositis is a non-specific clinical diagnosis that does not require objective medical findings. (HAR 0330.) Dr. Pearlman was of the opinion that Plaintiff was totally disabled. Dr. Pearlman did not identify objective medical data to support his conclusion. (HAR 0335.)

An MRI of Plaintiff's lumbosacral spine in July 2005 revealed a small central disc bulge L5-S1; a slight loss of intervertebral disc signal at L4-5; the presence of posterior ligamentus hypertrophy. (HAR 0336-0337.) Dr. Pearlman's additional nerve conduction tests performed of Plaintiff's legs showed "normal motor and sensory conduction bilaterally . . . . [with] no signs of denervation, motor unit potential were normal." (HAR 0335.)

---

[5]     Dr. Walters, who conducted the evaluation, made no diagnosis of Plaintiff's condition. Although he mentions carpal tunnel syndrome, this condition was never again mentioned in the administrative record.

On October 11, 2005, Phillip Marion, MD, a pain management specialist discussed Plaintiff's symptoms and condition with Dr. Pearlman.  (HAR 0329.)  According to Dr. Marion's report of the same date:

> Dr. Pearlman . . . stated the patient has complaints of chronic pain without evidence of underlying objective clinical findings.  Extensive clinical work-up including laboratory studies, electrodiagnostic evaluation and radiological studies were normal or unremarkable.  Physical examination documents a normal range of motion and neurological examination. Due to her continued complaints of pain without objective findings, Dr. Pearlman made the (non-specific) diagnosis of fibromyositis.  Dr. Pearlman also indicated that the patient was unable to work due to her complaints of pain.  Again, he agreed the patient was functionally independent and there was no specific objective impairment to prevent her from performing the routine duties of her regular job.

(HAR 332.)  Dr. Marion concluded that "there remain no objective impairments via physical examination, laboratory studies, electrodiagnostic evaluation or radiological studies to support any specific occupational limitations/restrictions." (HAR 0332.)

As of April, 2006, Dr. Pearlman diagnosed Plaintiff with fibromyalgia. (HAR 0584.) His office note states that Plaintiff complained of tenderness but was managing with her current medications.  Dr. Pearlman completed a physical capacity evaluation on April 10, 2006, concluding that Plaintiff could stand less than half an hour, walk less than half an hour, and sit less than half an hour within an 8-hour work day, that she could stand, walk, and sit at one time without interruption for no more than half an hour.  Dr. Pearlman further concluded that Plaintiff was able to lift up to 10 pounds occasionally, could not use hands for repetitive pushing and pulling, could not use her feet for repetitive movements as in operating foot controls, was unable to squat, crawl, or climb ladders, unable to reach above shoulder level, and her condition was likely to deteriorate if placed under stress, particularly stress associated with a job. (HAR 0581-0582).

**D.    Termination of Plaintiff's LTD benefits and Administrative Appeal**

On October 14, 2005, Hartford denied Plaintiff's claim for continued LTD benefits, concluding that, based on the medical evidence, she was no longer continuously unable to perform her own occupation. Plaintiff appealed Hartford' s decision and submitted the additional medical information from Dr. Pearlman, referenced above, following the April, 2006 physical capacity evaluation. In addition to considering Plaintiff's supplemental evidence, Hartford retained Dr. Rose Ho, board certified in Physical Medicine and Rehabilitation, to review Plaintiff's medical records. Dr. Ho's June 20, 2006 report summarizes Plaintiff's relevant medical history and treatment and found that Plaintiff was capable of employment at a light work activity level.

Hartford thereafter denied Plaintiff's appeal and concluded, as set forth in a letter to Plaintiff dated June 27, 2006, that based on the totality of the evidence, "the claimant's self-reported symptoms correlated with the findings on physical/clinical examination, and the opinion of Dr. Pearlman, the medical documentation does not support any findings . . . that would reasonably be expected to cause functional impairment that would preclude [Plaintiff] from performing the material and substantial duties of her own occupation." (HAR 0304.)  This lawsuit followed.

## II.

**A.    Standard of Review for ERISA Claims**

Plaintiff alleges a wrongful denial of disability benefits and seeks recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).[6] Under this section of ERISA, a civil action may be brought by

---

[6]    Plaintiff does not expressly reference ERISA in her Complaint, although she does demand "monthly or other periodic benefits to which [she] is entitled under the terms of the subject [disability] policy." (Pl's Compl., Demand for Judgment, ¶ 3.)  Plaintiff did not oppose removal of the case based on the Court's jurisdiction under ERISA, 29 U.S.C. § 1132(a).

a participant or beneficiary "to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

A district court generally reviews a challenge under 29 U.S.C. § 1132(a)(1)(B) for a denial of benefits using a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996). The deferential arbitrary and capricious standard of review applies, however, if the benefit plan grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. This directive does not mean, however, that the plan must employ the term "discretionary" or some other specific terminology. Although the plan need not include "magic words" in order to vest the plan administrator with discretion, the grant of discretionary authority must be "clear" in order to trigger the arbitrary and capricious standard of review. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc).

Since December 31, 2003, and at all times relevant to Plaintiff's claim for benefits, Hartford contracted to provide plan administration services to the Kraft Plan. The Kraft Foods Group Plan provides discretion to Hartford to administer the Plan. The Plan provides as follows:

Discretionary authority of plan administrator.

The Plan Administrator has complete discretionary authority to interpret the terms of the plan and to decide factual and other questions relating to the plan and the plan benefits, including, without limitation, eligibility for, entitlement to, and payment of benefits. The plan administrator has delegated full discretionary authority involving any benefits, termination to the disability claims administrator. The benefits under the plan will be paid only if the plan administrator decides in its discretion that the applicant is entitled to them.

-8-

The parties do not dispute that Kraft's Plan grants discretionary authority to Hartford to render disability and eligibility determinations. Moreover, the parties agree that the "arbitrary and capricious" standard of review applies.

The arbitrary and capricious standard "is the least demanding form of judicial review. . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Union*, 64 F.3d 238, 242 (6th Cir. 1995.) Determinations are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).

Although the arbitrary and capricious standard is deferential, "'it is not, however, without some teeth.'" *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)(quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). The deferential arbitrary and capricious standard "does not mean [the court's] review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Thus, the Court's obligation under ERISA to review the administrative record to determine whether the plan administrator acted arbitrarily and capriciously "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald*, 347 F.3d at 172.

**B.     State Law Claims, Proper Defendant and Demand for Money Damages**

After Plaintiff exhausted the administrative-appeals process, she filed a Complaint in the

Muskinghum County, Ohio Court of Common Pleas seeking LTD under the terms of the Plan. Defendants properly removed the case to this Court under Section 502 of ERISA, 29 U.S.C. § 1132(a). Although the Court construes Plaintiff's Complaint as raising matters related exclusively to her assertion that Defendants wrongfully terminated her LTD, to the extent, if any, Plaintiff intended to assert any state-law claims, for which she demanded a jury, those claims are preempted by ERISA. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (ERISA preempts all state laws " relating to" employee benefit plans " even if the law is not specifically designed to affect such plans, or the effect is only indirect); *FMC Corp. v. Holliday*, 498 U.S. 52 (1990) ("The [ERISA] preemption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA.").

In this case, the only properly-named defendant is Hartford Life Group Insurance Company, n/k/a Hartford Life and Accident Insurance Company. Hartford served as the Claims Administrator of the Kraft Group Long Term Disability Plan. Plaintiff's Complaint does not state a claim against any other entity named in the Complaint. Further, Plaintiff does not identify any additional facts in her Motion for Judgment upon which this Court could conclude that she intended any of other entity, other than the Plan Administrator, Hartford, to be liable. Accordingly, all Defendants, with the exception of Hartford Life Group Insurance Company, are **DISMISSED.**

Although the circuits are split on the issue of whether a plan is the only proper defendant in a suit to recover benefits under § 502(a)(1)(B, in the Sixth Circuit, plan administrators, such as Hartford, may be properly named as parties in an ERISA action. "[I]n the Sixth Circuit, the proper party defendant in an ERISA action concerning benefits is the party that is shown to control

-10-

administration of the plan." *Little v. UNUM Provident, Corp.*, 196 F. Supp.2d 659, 672 (S.D. Ohio 2002)(citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)); *see also West v. Sedgwick Claims Mgmt. Servs., Inc.*, Case No. 3:05-CV-456-S, 2006 WL 4542715 *2-3 (W.D. Ky., June 19, 2006)(unreported)(discussing split of authority and examining Sixth Circuit precedent arriving at the conclusion that a plan administrator may be a proper party-defendant).[7]

ERISA allows plan beneficiaries, plan administrators, and the Secretary of Labor to enforce its provisions. 29 U.S.C. § 1132(a)(1)-(6). The statute, however, distinguishes between the type of relief available to each of these parties. *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481 (6th Cir. 2001). The Secretary of Labor and plan administrators, who act on behalf of a benefit plan, may seek a full range of legal and equitable relief. *Id.*; 29 U.S.C. § 1132(a)(1)-(6). "In contrast, ERISA restricts plan *beneficiaries* to *equitable relief* with no recourse to money damages." *Id.* (citing 29 U.S.C. § 1132(a)(3); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)).[8]

---

[7]     Because a split in authority exists concerning whether a party other than the ERISA plan may also be a proper party-defendant in a suit for benefits under § 502(a)(1)(B), in some circuits, Plaintiff's Complaint would be subject to dismissal for failure to name the Kraft Plan. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (finding ERISA permits suits to recover benefits only against the Plan as an entity and holding that a suit for benefits against an employee of the ERISA plan, in her official capacity, could not be maintained). Here, however, Defendants have not argued or moved for dismissal because the Plan is not a party to this action. Instead, they accept that Hartford controls the administration of the Kraft Plan, and thus acknowledge that it is the proper party. Plaintiff has not questioned Hartford's position in this regard.

[8]     In particular, ERISA provides that a civil action may be brought

(3)     by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Thus, although Plaintiff's Complaint seeks "compensatory damages in a sum in excess of $25,000," (Compl., Demand, ¶ 1), her remedy, if any, is limited to an order in equity requiring Hartford to reverse its denial of her claim of disability benefits. The Court's analysis is accordingly limited to the equitable relief Plaintiff seeks under ERISA as against Hartford.

### III.

This case turns on the essential question of whether Hartford's decision to terminate Plaintiff's LTD benefits, which was based on a finding that she was no longer continuously unable to perform the material and substantial duties of her "own occupation," was rational and supported by the medical evidence. Plaintiff maintains that Hartford's findings as to the requirements of her "own occupation" as well as its conclusions regarding her functional capacity were arbitrary and capricious, and thus should be overturned. However, based on the administrative record, and applying the requisite deferential standard of review, the Court concludes that Hartford did not act in an arbitrary and capricious manner in terminating Plaintiff's LTD benefits.

As noted above, Kraft's Plan is an "own occupation" policy, and, as such, does not describe or define any particular job or the physical requirements of such work. Hartford classified the Plaintiff's occupation as "light work" under the definition contained in the Department of Labor's Dictionary of Occupational Titles. Plaintiff objects to the classification of her work as "light," and contends that the record establishes that her job was far more demanding than light duty. More specifically, Plaintiff argues that Hartford acted arbitrarily and capriciously by applying the definition of light duty in the Department of Labor's Dictionary of Occupational Titles, and instead should have engaged in a case-specific analysis of her exact duties.

The administrative record reveals that Hartford consulted various resources in its search to determine the material and substantive duties of Plaintiff's occupation. Hartford did not rely exclusively on the Department of Labor Dictionary, but instead contacted three Kraft employees, including Plaintiff's direct supervisor, to ascertain the precise physical requirements of her job. Moreover, Plaintiff has never argued that the material and substantive components of her job were anything other than neatly merchandising displays and shelves with current stock. She has not refuted the evidence from her co-workers that, in order to accomplish these material tasks, she would be required to lift a maximum of 18 pounds for a case of Oreo's, and, on average lift 12-pound cases of Nabisco products. Plaintiff's contention that she was required to lift 50 pounds, which she presumably arrives at by reference to Kraft's Job Analysis Profile that indicates a requirement to "occasionally" lift up to 50 pounds, is inexact, according to other employees. In any event, the Court declines to find that Hartford acted arbitrarily or capriciously in determining that a requirement to lift, occasionally, a certain amount of weight does not control the chief question of what constitutes the material and substantial duties of an occupation.[9]

The discretion to determine benefits eligibility and to interpret all the terms of an ERISA plan

---

[9] Plaintiff cites several cases in support of her position that Hartford should not have relied on the Department of Labor Dictionary of Occupational Titles when determining the substantial and material duties of Plaintiff's occupation, and instead should have relied on the descriptions provided by Plaintiff and her co-workers. These cases are inapposite. For instance, Plaintiff relies on *Kramer v. Paul Revere Life Ins. Co.*, 2007 U.S. Dist. LEXIS 21061 (E.D. Mich. 2007) for the proposition that Hartford improperly relied on the Dictionary of Occupational Titles' "light work" classification. In *Kramer*, however, the court found that it was not arbitrary and capricious to rely on the functions described in the Dictionary. "If, perhaps, a doctor had specifically stated that his conclusion was based entirely on the characterization of Plaintiff's occupation, then it may be arbitrary and capricious if the underlying definition was in factly clearly incorrect." *Id*. at *56. Here, Hartford did conduct a case-specific analysis, and did not rely exclusively on Department of Labor literature. Hartford sought, and relied on statements of Plaintiff's supervisor and co-workers. Moreover, Hartford never discounted or rejected evidence submitted by Plaintiff on this issue because, as the record reveals, she did not submit any.

extends to an administrator's decision of what constitutes a participant's "own occupation." *Osborne v. Hartford Life & Accident Co.*, 465 F.3d 296, 299 (6th Cir. 2006). In *Osborne*, the Court of Appeals for the Sixth Circuit upheld a decision denying LTD benefits as "reasonable" where the administrator used only the Dictionary of Occupational Titles to determine the duties of the claimant's "own occupation." *Id.* at 299-300. Certainly, under *Osborne*, Hartford's reliance, in part, of the Dictionary, in conjunction with job descriptions and information from co-workers, must also be entitled to deference.

Hartford consulted not only the Department of Labor Dictionary's definition of "light work," but also engaged in a fact-intensive, case-specific analysis of Plaintiff's "own occupation." The Kraft Plan conferred discretion on Hartford to interpret all terms within the Plan, which extended to determinations of what constituted Plaintiff's "own occupation." Its determination in this regard is neither arbitrary nor capricious.

Plaintiff also contends that Hartford rejected the opinions of her treating physician, Dr. Pearlman, and instead relied on the opinions by Dr. Rose Ho and Dr. Phillip Marion. Plaintiff notes that neither Dr. Ho nor Dr. Marion examined Plaintiff. She also contends that Hartford's failure to arrange for its own physical examination of Plaintiff, and its rejection of her treating physician's opinions in favor of those who never even examined her, exemplifies the arbitrary and capricious nature of the Plan administrator's decision.

The administrative record reveals, however, that Hartford did request and arrange a physical evaluation of Plaintiff, which Plaintiff underwent on May 18 and 19, 2005. (HAR 0113-14, 465-66). Furthermore, Dr. Marion did not merely conduct a paper review of Plaintiff's medical history and the functional capacity evaluation. Dr. Marion also discussed Plaintiff' s complaints with her

-14-

treating physician, Dr. Pearlman. (HAR 0332). According to Dr. Marion, "the case was discussed with Dr. Pearlman 10/11/2005 who stated the patient has complaints of chronic pain without evidence of underlying objective clinical findings..... Dr. Pearlman also indicated the patient was unable to work due to her complaints of pain. Again, he agreed the patient was functionally independent and there was no specific objective impairment to prevent her from performing the routine duties of her regular

job." (HAR 0332.)

The Court cannot accept Plaintiff's argument that Hartford disregarded certain records or failed to provide its reviewing physicians with the relevant information necessary to reach an informed opinion. Correspondence between Hartford and Plaintiff during the administrative process makes clear that Hartford did consider all of Plaintiff's medical records. Hence, this case is distinguishable from those cited by Plaintiff.

For instance, in *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005), the court disapproved of a plan administrator's reliance on a report, composed by a physician who only reviewed the medical records, but who did not "describe the data he reviewed in reaching his conclusion. Pointedly, he makes no mention of the surgical reports, x-rays or CT scans in the record." In *Calvert*, the court faulted the doctor's report because the physician was obviously unaware of the initial cause of the claimant's condition. Further, although the physician asserted that he had conducted a thorough review of the record, he recommended a functional capacity evaluation, apparently not knowing that the claimant had already undergone such an exam, the results of which were in the record. *Id.*

-15-

Similarly, in *Evans v. Unum Provident*, 434 F.3d 866, 879 (6th Cir. 2006), the plan administrator ignored medical evidence in the file. The plan administrator erroneously stated that claimant's seizures were not documented by hospital records. In fact, the claimant was hospitalized and tested, and the record contained ample objective evidence of her seizures. *Id.*

Plaintiff also maintains that Hartford should have afforded more weight to her treating physician's opinions. The Supreme Court has held in the ERISA context, however, that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant' s physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician' s evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Here, Hartford arranged for an independent examination of the Plaintiff by a physical therapist. Hartford considered all of the medical evidence in the file. The record does not bear out Plaintiff's assertion that Hartford arbitrarily refused to credit her reliable evidence, including the opinions of a treating physician. Hartford relied on several professional opinions. This reveals "a deliberate principled reasoning process" which the court must find "is supported by substantial evidence." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 52 (6th Cir. 1998).

Hartford's decision was reasonable and supported by the medical evidence of record. A physical therapist performed a functional capacity evaluation and concluded that Plaintiff can lift floor to waist 10 lbs. occasionally, 5 lbs. frequently; lift waist to overhead 10 lbs. occasionally, 5 lbs. frequently; horizontal lift 15 lbs. occasionally, 10 lbs. frequently; push 15 lbs. occasionally, 10 lbs. frequently; and pull 17.5 lbs. occasionally, 11.5 lbs. frequently. Plaintiff was capable of constant sitting and standing, walking and climbing stairs. The evaluation indicated that Plaintiff can

frequently bend, rotate, and crouch. The physical therapist noted " significant abilities" as "Current Physical Demand Characteristic of Light Work: 20 lbs. occasional, 10 lbs. or less frequently." (HAR 0466). Following the functional capacity evaluation, Dr. Marion reviewed Plaintiff's medical records and conferred with Plaintiff's treating physician. Dr. Marion concluded that "there remain no objective impairments via physical examination, laboratory studies, electrodiagnostic evaluation or radiological studies to support any specific occupational limitations/restrictions." (HAR 0332). Dr. Ho also conducted a second review of Plaintiff's medical records. Dr. Ho also arrived at the conclusion that Plaintiff is capable of performing light-duty work.

Hartford reasonably relied upon the informed opinions of Drs. Marion and Ho, and physical therapist Ogle, each of whom concluded that Plaintiff is capable of performing the physical requirements of "light work" and therefore, the "material and substantial duties of her own occupation." *See Evans v. Metropolitan Life Ins. Co.*, Case Nos. 05-5791 & 05-6327, 2006 WL 1827704 (6th Cir. June 29, 2006) (holding that plan administrator's decision was not arbitrary or capricious when it relied on three doctors who concurred that plaintiff was capable of sedentary work instead of the one doctor who imposed significant physical restrictions.)

Hartford' s decision to deny continued LTD benefits was rational in light of the Plan's provisions and reasonable based on the medical evidence. The decision was neither arbitrary nor capricious and is, therefore, affirmed.

## IV.

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. # 20) is **DENIED**; and Defendants' Motion for Judgment on the Pleadings (Doc. #18) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.

_____3 - d8 - 2008_____
DATED

_____
EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

-18-